IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| RASHAAD CARSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 317-054 |
| | ) | |
| PHIL HALL, Warden, Telfair State Prison; | ) | |
| BARBARA JEAN GRANT, Unit Manager | ) | |
| of the Tier Program/Segregation; and | ) | |
| JARED WICKER, STG Coordinator, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, an inmate at Hancock State Prison in Sparta, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983 regarding events alleged to have occurred at Telfair State Prison in Helena, Georgia. Plaintiff is proceeding *pro se* and *in forma pauperis*. Before the Court is Defendants' pre-answer motions to dismiss (doc. no. 17), which the Court **REPORTS** and **RECOMMENDS** be **GRANTED** and this case **DISMISSED** and **CLOSED**.

I.      **BACKGROUND**

Plaintiff alleges the following facts, which must be taken as true for purposes of the motion to dismiss.

Plaintiff was on the Security Group Threat ("SGT") list as a member of the "Bounty Hunters" gang. (Id. at 5.) Plaintiff wanted to remove his affiliation and was placed in

segregation. (Id.) Warden Hall told Plaintiff he could remain in segregation until he was removed from the SGT list. (Id.) After Plaintiff received a disciplinary report on December 17, 2016, Plaintiff wrote Warden Hall to "remind him of [Plaintiff's] situation." (Id.) Plaintiff asked Warden Hall to inform Ms. Grant that Warden Hall gave Plaintiff permission to remain in segregation until "renuncification [sic] was complete." (Id.) Warden Hall ignored Plaintiff. (Id.)

Plaintiff wrote Ms. Grant, explaining he was "in the process of renuncification [sic]" and did not feel safe until the STG designation was removed from his record. (Id.) Ms. Grant told Plaintiff "'I don't give a damn inmate, either you pack up or your ass is goin' to the tier.'" (Id.) Plaintiff also informed Mr. Wicker, who told Plaintiff he was still "'on the list.'" (Id.) Plaintiff received two additional disciplinary reports because he refused to move out of segregation. (Id.) Plaintiff lost privileges due to the disciplinary reports. (Id.) Plaintiff told Warden Hall, Ms. Grant, and Mr. Wicker he "wasn't safe [in general population] until [he] was officially renounced" but Plaintiff was "never offered . . . protective custody." (Id. at 5-6.)

On March 3, 2017, Ms. Grant "forced [Plaintiff] out of segregation" and into general population. (Id. at 5.) Approximately four hours later, Plaintiff was "stabbed over a dozen times in the chest by a gang member." (Id.) Plaintiff has never been removed from the STG list. (Id.) Plaintiff has "experienced mild flashbacks" as a result of the attack and has undergone a mental health evaluation. (Id. at 7.) Plaintiff seeks $100,000 in punitive damages, $15,000 in nominal damages, and removal of the disciplinary reports and sanctions from his files. (Id.)

Plaintiff filed three grievances relevant to the present motion. Plaintiff filed grievance number 233749 on December 18, 2016, alleging on December 14 and 16, 2016, he

was asked to "move from E1 to D-building," where he did not feel he was safe because of a prior altercation with an inmate housed there. (Doc. no. 17-6, p. 4.) On December 30, 2016, Warden Hall evaluated and denied grievance 233749 because routine housing assignments are not grievable. (Id. at 1.) On January 4, 2017, Plaintiff acknowledged receipt of the grievance denial. (Id.) Plaintiff did not appeal the denial of grievance number 233749. (Doc. nos. 17-2, ¶ 22; 17-5.)

Plaintiff filed grievance number 237605 on February 7, 2017, alleging TSP Lieutenant J. Beasley "operates the [disciplinary report] hearings with impunity, having no regards for the facts, nor Standard Operations of Procedure, nor the Due Process of the D.R. investigations . . . ." (Doc. no. 17-7, p. 2.) On March 16, 2017, Warden Hall evaluated and denied grievance 237605 on the ground disciplinary reports, hearings, procedures, punishment, fees, or assessments are non-grieveable. (Id. at 3.) On March 22, 2017, Plaintiff acknowledged receipt of the grievance denial. (Id.) On March 24, 2017, Plaintiff appealed Warden Hall's denial of grievance 237605. (Id. at 1.) In his grievance appeal form, Plaintiff alleged he was stabbed on March 3, 2017, after being moved out of segregation and had warned Defendants about the substantial risk of serious harm he would face if not housed in segregation. (Id.) On May 2, 2017, the Central Office denied Plaintiff's appeal on the ground that disciplinary procedures, punishments, and assessments are not grievable issues. (Doc. no. 17-8, p. 2.) The Central Office did not address the facts regarding the March 3rd stabbing, which Plaintiff first alleged regarding grievance 237605 in his grievance appeal form. (Id.; doc. no. 17-7, p. 1.)

On March 7, 2017, Plaintiff filed grievance number 238687, alleging he was stabbed on March 3, 2017, after being released from segregation prior to completely renouncing his gang affiliation.  (Doc. no. 17-9, p. 4.)  Plaintiff alleged he asked Defendants to remain in segregation and informed them of the substantial risk of serious harm he faced by being taken out of segregation and received five disciplinary reports for initially refusing to move out of segregation.  (Id.)  On March 16, 2017, Warden Hall evaluated and denied grievance 238687 on the ground disciplinary reports and grievances containing multiple issues are non-grievable.  (Id. at 1.)  On April 4, 2017, Plaintiff acknowledged receipt of the grievance denial.  (Id.)  Plaintiff did not appeal the denial of grievance number 237687.  (Doc. nos. 17-2, ¶ 24; 17-5.)

## II.   DEFENDANT'S MOTION TO DISMISS SHOULD BE GRANTED BECAUSE PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES.

### A.   The Legal Framework

Where, as here, Defendants have filed a motion to dismiss based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions.  First, the Court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, Defendant's motion will be granted.  Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted), *cert. denied*, 555 U.S. 1074 (2008)).  If the complaint is not subject to dismissal at the first step, then at step two the Court makes specific findings to resolve the disputed factual issues, with Defendant

bearing the burden of proving Plaintiff has failed to exhaust his administrative remedies.  Id. Based on its findings as to the disputed factual issues, the Court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted.  Id.  Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences."  Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown the grievance process is futile or inadequate.  See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93 (2006).  In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way.  Id. at 90 (internal quotation omitted).  If a

5

prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims.  Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit.  Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).[1]  Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective."  Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326.  Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'"  Johnson, 418 F.3d at 1155, 1156.

### B.    The Administrative Grievance Procedure

Based on the dates of the alleged incidents, the administrative grievance procedure applicable in this case is governed by the version of the Georgia Department of Corrections' Standard Operating Procedure ("SOP") IIB05-0001, which became effective on July 20, 2015.  (See doc. no. 17-3.)  The administrative remedies procedure commences with the filing of a grievance with the inmate's counselor.  SOP IIB05-0001 § VI(D)(1)-(3).  The

---

[1]Other federal circuits have similarly held the PLRA does not allow a plaintiff to exhaust administrative remedies while his case is pending.  See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001); Lee v. Lappin, No. 04-5008, 2004 WL 1701045 (D.C. Cir. July 29, 2004); Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 538 (7th Cir. 1999).

inmate's counselor forwards the grievance to the grievance coordinator, who must screen the grievance to determine whether to accept it or recommend the Warden reject it.  Id. § VI(D)(3), (5)(a).  The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance.  Id. § VI(D)(4).  The timeliness requirements of the administrative process may be waived upon a showing of good cause.  See id. § VI(D)(5)(b)(2).  Should the grievance coordinator recommend rejection, the SOP requires the Warden give a response to the inmate's counselor to deliver to the inmate within forty calendar days of its original receipt; a onetime ten calendar day extension may be granted.  Id. § VI(D)(7).

If the inmate is not satisfied with the Warden's response to the grievance, he has seven calendar days from the receipt of the response to file an appeal to the Central Office of the Commissioner; the Office of the Commissioner or his designee has one hundred calendar days after receipt of the grievance appeal to respond.  Id. § VI(E)(2), (7).  The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office or the expiration of the one hundred day time period.  See id. § VI(E).

### C.      Plaintiff's Failure to Exhaust

Plaintiff's claims should be dismissed because he failed to properly exhaust his administrative remedies as to grievances 233749 and 238687 and did not exhaust his claims even though he exhausted the administrative remedies as to grievance 237605.

### 1.      Grievance 233749

Plaintiff failed to exhaust the administrative grievance process as to grievance 233749 because he did not appeal its denial.  (Doc. nos. 17-2, ¶ 22; 17-5.)  Warden Hall denied

7

grievance 233749 on December 30, 2016, and Plaintiff was notified of the denial on January 4, 2017.  (Doc. no. 17-6, p. 1.)  Plaintiff had seven calendar days from his receipt date to file an appeal to the Central Office of the Commissioner.  SOP IIB05-0001 § VI(E)(2).  Plaintiff never filed an appeal.  (Doc. nos. 17-2, ¶ 22; 17-5.))

Plaintiff does not explain why he did not appeal grievance 233749, allege the grievance process was in any way unavailable to him, or claim anything prevented him from appealing grievance 233749's denial.  Therefore, because Plaintiff failed to either appeal grievance 233749 within the administrative deadline or give any reason for not doing so, it does not satisfy the exhaustion requirement.  Woodford, 548 U.S. at 90; Johnson, 418 F.3d at 1159.

### 2.    Grievance 237605

Plaintiff properly exhausted the administrative grievance procedure as to grievance 237605.  However, Plaintiff only alleged issues unrelated to his claims in this lawsuit in his initial grievance and improperly raised new issues related to his claims only in his appeal, grievance 237605 does not satisfy the exhaustion requirement as to his claims.

In grievance 237605, Plaintiff raised Lieutenant Beasley's alleged mismanagement of the disciplinary procedure.  (Doc. no. 17-7, p. 2.)  On March 22, 2016, Plaintiff received Warden Hall's denial of grievance 237605.  (Id. at 3.)  On March 24, 2017, Plaintiff addressed the issues central to this lawsuit—the March 3rd transfer and inmate attack—for the first time in his appeal for grievance 237605.  (Id. at 1.)  Although Plaintiff previously addressed those issues in grievance 238687, he had not yet received Warden Hall's denial of

that grievance.  (Doc. no. 17-9, p. 4.)   On appeal, the Central Office only addressed the issue raised in Plaintiff's initial grievance and denied the appeal.  (Doc. no. 17-8.)

Plaintiff argues he "exhausted all his remedies" as to his claims because grievance 238687 and the appeal of grievance 237605 addressed the same issues.  (Doc. no. 22, p. 2.) Plaintiff claims a "clerical" error resulted in the March 24, 2017 grievance appeal form bearing the number "237605" instead of "238687."  (Id.)  Plaintiff states he had two active grievances in March 2017 and "it is possible the numbers were entered incorrectly."  (Id.) Furthermore, Plaintiff argues the issues alleged in the grievance appeal form could not have been related to grievance 237605, since the transfer and attack at issue occurred on March 3rd after he filed grievance 237605.  (Id.)

Plaintiff's argument that he exhausted his administrative remedies as to his claims fails because:  (1) Plaintiff's attempt to circumvent the grievance procedure by raising new issues on appeal of grievance 237605 was procedurally improper, and (2) the purposes of administrative review under the PLRA were not served because the Central Office did not consider Plaintiff's new issues on the merits when denying his appeal of grievance 237605.

First, by raising new issues in his grievance appeal form, Plaintiff attempted to circumvent the standard GDOC administrative appeal process.  A prisoner may only file a grievance appeal after:  (1) the offender receives the grievance coordinator's rejection of the initial grievance; (2) the offender receives the warden's decision on the initial grievance; or (3) the time allowed for the wardens decision to be given to the offender has expired.  SOP IIB05-0001 § VI(E)(1).  Thus, Plaintiff was required to wait until one of these triggering events occurred before appealing the issue raised in grievance 238687.

9

The grievance coordinator recommended rejection of grievance 238687 on March 7, 2017, Warden Hall rejected the grievance on March 16, 2017, and Plaintiff received Warden Hall's decision on April 4, 2017, nearly ten days after incorporating the issues raised in grievance 238687 into his appeal of grievance 237605.  (Doc. nos. 17-9, p. 1, 3; 17-7, p. 1.) Additionally, only twenty-eight days passed between Plaintiff filing grievance 238687 and receiving Warden Hall's rejection. (Doc. no. 17-9, pp. 1, 4.) Thus, Plaintiff was not yet entitled to appeal the issues raised in grievance 238687 at the time he included them in his appeal of grievance 237605.  Instead of waiting for Warden Hall's denial of grievance 238687 before appealing the issues raised therein, Plaintiff improperly circumvented the grievance procedure by including the issues in his appeal of grievance 237605.  Because of Plaintiff's procedurally improper attempt to appeal those issues prematurely under another grievance, grievance 237605 does not exhaust Plaintiff's claims.  Woodford, 548 U.S. at 90; Johnson, 418 F.3d at 1159.

Furthermore, because Plaintiff's attempt to raise new claims on appeal was procedurally improper, the Central Office did not consider the newly-raised issues on the merits. Under the PLRA, a prisoner must properly exhaust all available administrative remedies so the administration has the opportunity to address the issues raised on the merits. Halpin v. Crist, 405 F. App'x 403, 407 (11th Cir. 2010) (citing Woodford, 548 U.S. at 81, 88, 90).  The purposes of the PLRA's exhaustion requirement are not achieved where officials do not review the merits of a prisoner's complaint.  Johnson, 418 F.3d at 1159.

Here, the Central Office did not address the new issues contained in Plaintiff's grievance appeal form for grievance 237605 before denying his appeal. (Doc. no. 17-8.)

Thus, Plaintiff's procedurally improper appeal prevented evaluation of the issues at all levels of administrative review.  Id.  Accordingly, Plaintiff did not properly exhaust the available administrative remedies as to those issues.

Finally, Plaintiff's claim that the designation of the appeal form as "237605" was "simply clerical" is implausible.  Plaintiff received Warden Hall's denial of grievance 237605 on March 22, 2017, and filed the appeal form for grievance 237605 on March 24, 2017.  (Doc.no. 17-7, p. 3.)  However, Plaintiff only received Warden Hall's denial of grievance 238687 on April 4, 2018, nearly ten days after appealing grievance 237605.  (Doc. no. 17-9, p. 1.)  Thus, Plaintiff could not have confused which decision he was appealing, as he had only received one decision regarding his March 2017 grievances at the time he filed his appeal.  Thus, for reasons stated above, grievance 237605 does not satisfy the exhaustion requirement as to Plaintiff's claims.

### 3.    Grievance 238687

Finally, Plaintiff failed to exhaust the administrative grievance process as to grievance 238687 because he did not appeal its denial.  (Doc. nos. 17-2, ¶ 24; 17-5.)  The Warden denied grievance 238687 on March 16, 2017, and Plaintiff was notified of the denial on April 4, 2017.  (Doc. no. 17-9, p. 1.)  Plaintiff had seven calendar days from his receipt date to file an appeal to the Central Office of the Commissioner.  SOP IIB05-0001 § VI(E)(2).  Plaintiff never filed an appeal.  (Doc. nos. 17-4, ¶ 22; 17-5.))

As described above, Plaintiff claims, as a result of a "clerical" error, he attempted to appeal the issues raised in grievance 238687 on a grievance appeal form for grievance

11

237605.  (Doc. no. 22, pp. 1-2.)  The Court determined the appeal of grievance 237605 does not satisfy the exhaustion requirement as to Plaintiff's claims.

Nevertheless, regardless of whether Plaintiff satisfied the exhaustion requirement as to his claims through grievance 237605, Plaintiff still failed to appeal Warden Hall's decision regarding grievance 238687 after receiving it on April 4, 2017.  Plaintiff gives no explanation for his failure to appeal grievance 238687.  (Doc. no. 22.)  Therefore, because Plaintiff failed to appeal grievance 238687 within the administrative deadline and does not give any compelling reason for failing to do so, it does not satisfy the exhaustion requirement.  Woodford, 548 U.S. at 90; Johnson, 418 F.3d at 1159.

Accordingly, Plaintiff's claims are procedurally defaulted, Johnson, 418 F.3d at 1159, and Defendant's motion to dismiss should be granted.

## III.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendant's motions to dismiss be **GRANTED,** (doc. no. 17), and this case **DISMISSED** and **CLOSED**.

SO REPORTED and RECOMMENDED this 18th day of June, 2018, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

12